IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-15-2666 |
| § | |
| § | |
| TEPATITLAN MEXICAN KITCHEN, INC., § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Some of Houston's many restaurants and bars offer their customers not only food and drink, but also the opportunity to watch televised professional boxing matches. Some of those broadcasts require payment to view. Some of the restaurants and bars allegedly show them to customers without paying the licensor its fee. Some of those licensors sue. Courts in this district frequently handle cases asserting the licensors' claims that the broadcasts violate the Communications Act and seeking statutory and other damages. Most of the cases end with default judgments and the focus is on collection. In this case, the defendants have appeared through counsel, participated in discovery, and filed a cross-motion for summary judgment. In this case, J&J Sports Productions, Inc., a company that licenses pay-per-view boxing matches to restaurants and bars, alleges that Tepatitlan Mexican Kitchen, a Houston restaurant, and its owner, Efren Gonzalez, showed a fight without paying the fee to do so. J&J seeks statutory damages under the Communications Act, 47 U.S.C. §§ 553 and 605.

After discovery, the parties filed cross-motions for summary judgment. After considering the

briefs, record, and applicable law, the court denies both parties' motions for summary judgment. The case will be tried on the schedule previously set. The parties are to appear for their final pretrial conference and docket call on October 28, 2016.

The reasons for the rulings are explained below.

**I.      Background**

On September 15, 2012, Julio Cesar Chavez, Jr. fought Sergio Martinez in a boxing match available on pay-per-view. (Docket Entry No. 19-1, Ex. A at 6). J&J had an exclusive license to exhibit the closed-circuit telecast of the fight at commercial establishments like restaurants and bars. In order to show the fight, commercial establishments had to pay J&J a sublicense fee. (*Id.* at 6-7). The fight telecast was transmitted via scrambled satellite transmission. When the establishment paid the sublicense fee, J&J would arrange for an unscrambled transmission and broadcast to that establishment. (*Id.*).

Efren Gonzalez owns Tepatitlan, a Houston-area restaurant and bar. (Docket Entry No. 20-3 at 5). It is undisputed that Tepatitlan did not purchase a sublicense to show the fight or otherwise order the fight on pay-per-view. (Docket Entry 19-1, Ex. A at 7-8; Docket Entry No. 19-3, Ex. C at 4-5).

On the night of the fight, Adela Hernandez, an investigator working for J&J, went to Tepatitlan. She filed a declaration stating that the fight could be viewed on three televisions mounted on the restaurant walls. About 30 people were present. (Docket Entry No. 19-1, Ex. A-2 at 21). Tepatitlan disputes that it showed the fight at all.

**II.     The Applicable Legal Standards**

    **a.      Summary Judgment**

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' " *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

3

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); see also *Nola Spice*, 783 F.3d at 536.

### b. The Communications Act

J&J sued under 47 U.S.C. §§ 553 and 605. Section 553 provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553. Section 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Before May 2014, district courts in this circuit applied an identical strict-liability test to claims under both statutes. The plaintiff licensor had to show only that: (1) the defendant showed

4

the boxing match, for which the plaintiff had an exclusive exhibition license; and (2) the license-owner (here, J&J) had not authorized the defendant to do so. *J & J Sports Prods., Inc. v. Flor De Cuba, TX, Inc.*, No. CIV.A. H-13-3282, 2014 WL 6851943, at *3 (S.D. Tex. Dec. 3, 2014) (collecting cases). In May 2014, in another case filed by J&J, the Fifth Circuit rejected that analysis. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 348 (5th Cir. 2014). The court reasoned that an approach based on the license-owner's authorization improperly read out of § 553 the 'safe harbor' provision for persons "specifically authorized . . . by a cable operator" to show the event. *Id.* at 348. The court emphasized that it was the *cable operator's* authorization to show the event that governed a defendant's entitlement to shelter in the safe harbor provision, not authorization by the commercial exhibition license-holder. *Id.* at 349.

The defendants in *Mandell* had purchased a consumer pay-per-view version of a fight and showed it in a commercial establishment. The defendants argued that they came under the safe harbor because the cable provider had authorized their use of the signal. *Id.* at 347. The cable provider acknowledged that it had authorized this use, although claimed it was a mistake. *Id.* J&J argued that its authorization, not the cable operator's authorization, was what mattered. The Fifth Circuit rejected that argument. *Id.* at 348. J&J also argued that notwithstanding the cable provider's accidental authorization, the establishment's terms of service prohibited it from displaying premium channels like HBO (which distributed the fight for home pay-per-view purposes) for commercial gain; therefore, the exhibition was not authorized. *Id.* at 349-50. The Fifth Circuit rejected this argument and held that J&J had not met its summary judgment burden. *Id.* The court based its conclusion on the uncontroverted evidence that the cable provider had authorized the broadcast. despite the language in the terms of service. *Id.* at 350.

5

In a separate part of the opinion, the court held that § 553 governed interception of cable signals and § 605 governed interception of wireless 'radio' signals, like satellite TV broadcasts. *Id.* at 350-54. The court did not clarify whether the two-prong strict liability standard turning on the license-owner's authorization that it had just rejected for § 553 claims remained valid for actions under § 605. Several district courts in this circuit have continued to apply the pre-*Mandell* license-owner's-authorization standard under § 605. *See, e.g.*, *Innovative Sports Mgmt., Inc. v. Huetamo Enterprises, Inc.*, No. CV H-15-1478, 2016 WL 5791702, at *2 (S.D. Tex. Oct. 4, 2016); *J&J Sports Prods., Inc v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *2 (W.D. Tex. May 2, 2016).

This court does not find that approach persuasive. As this court explained in *Flor De Cuba*, 2014 WL 6851943, at *3, *Mandell*'s reasoning about § 553 applies equally to § 605. *Mandell* makes clear that courts adjudicating Communications Act claims must pay careful attention to the plain language of the governing provision. Just like § 553, § 605 conditions liability on lack of authorization "by the sender" of the radio transmission. The "sender" of a satellite transmission may or may not be the same entity as the owner of the license to commercially exhibit the event. The case that recent district court opinions cite in using the pre-*Mandell* test—*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753 (S.D. Tex. 2014)—is itself a pre-*Mandell* case. The case does not support continuing to use the license-owner-authorization test in light of *Mandell*'s instruction to carefully parse the statutory text. To obtain judgment as a matter of law, J&J must point to or submit competent summary judgment evidence meeting its burden of proving that Tepatitlan showed the fight that the sender of the satellite signal did not authorize.

**III.   Analysis**

### a. Tepatitlan's Motion

Tepatitlan contests the accuracy and reliability of Hernandez's affidavit, which is J&J's only evidence that Tepatitlan showed the fight. Tepatitlan argues that Hernandez misstated her description of the inside of the restaurant,[1] and that the reliability of her recollection is diminished by her inability to remember other stops she made that night. (Docket Entry No. 18 at 2-3). Tepatitlan also argues that Hernandez's affidavit is unreliable because it is self-interested, since she was paid for her investigative work only when she identified license violators. (Id. at 3, 7).

This argument is unpersuasive. A court cannot consider credibility at the summary judgment stage. *See Anderson*, 477 U.S. at 255 (1986). The fact that a witness's statement is "self-interested" does not mean that the evidence is improper or inadmissible. *See C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 Fed. App'x 439, 443 (5th Cir. 2011). Hernandez's affidavit is competent summary judgment evidence.

Tepatitlan's second argument is that J&J's suit is time-barred, because the court should apply Texas's two-year statute of limitations for conversion. (Docket Entry No. 18 at 4-7). This argument is also unpersuasive. Tepatitlan acknowledges that the statute of limitations for Communications Act claims is three years. *Prostar v. Massachi*, 239 F.3d 669, 678 (5th Cir. 2001). J&J's claim, which was filed on September 14, 2015, (Docket Entry No. 1)—one day short of three years—is not time-barred.

Tepatitlan's third argument is that the affidavits it submitted with its summary judgment

---

[1] The court notes that although Tepatitlan repeatedly references "Exhibit 3, Defendants' Answers to Interrogatories, No 25," which purportedly demonstrates that Hernandez was incorrect in reporting details about the restaurant, Tepatitlan's attached exhibits, (Docket Entries No. 18-4, 20-3), only include interrogatories and responses for interrogatories 1 to 24. The court was not able to find an interrogatory number 25 in Tepatitlan's exhibits. The interrogatories that are attached do not appear to contain assertions about the interior details of the restaurant.

motion demonstrate that there is no genuine factual dispute that the restaurant did not show the fight. Tepatitlan first points to a notarized letter by a restaurant patron stating that he had been to the restaurant five times a month since it opened, including around the time of the fight. (Docket Entry No. 18-3 at 1). The patron stated that he had never seen any pay-per-view broadcasts on the televisions at the restaurant. (*Id.*). Tepatitlan then points to 13 near-identical affidavits, each of which reads "I, <name> never seen pay-per-view fight at Taqueria Tepatitlan located at 10337 East Freeway Houston, Texas 77029 any day and on date question September 15, 2012 between Julio Cesar Chavez vs. Sergio Martinez." (*Id.* at 2-14). One affidavit is by Efren Gonzalez, the restaurant owner. There is no information about the other affiants. Even assuming that the affidavits are competent summary judgment evidence that no fights were broadcast, Hernandez has submitted a controverting affidavit that gives rise to a material and genuine factual dispute.

    **b.**    **J&J's Motion**

  It is undisputed that Tepatitlan had satellite TV rather than cable, so § 605 governs. To prevail on its summary judgment motion, J&J must show that there is no genuine factual dispute material to determining that Tepatitlan showed the fight and the "sender" of the satellite TV signal did not authorize Tepatitlan to do so. *See Flor De Cuba*, 2014 WL 6851943, at *3. Tepatitlan maintains that it did not show the fight at all and denies that anyone ordered the fight on the restaurant's behalf. (Docket Entry No. 18-4 at 3-4). The second element is undisputed: Tepatitlan's denial that anyone ordered the broadcast of the fight necessarily means that the sender did not authorize it. But because there is a genuine factual dispute material to determining the first issue—whether Tepatitlan showed the fight at all— the court denies J&J's motion for summary judgment.

J&J points to Hernandez's affidavit as evidence that Tepatitlan showed the fight. The affidavit describes how Hernandez went to Tepatitlan on the night of the fight and saw it broadcast on Tepatitlan's TVs. (Docket Entry No. 19-1, Ex. A-2). J&J also argues that Tepatitlan's failure to produce the restaurant's DirecTV invoice for September 2012, despite the fact that it was otherwise able to produce every monthly statement from December 2011 until November of 2012, (*see* Docket Entry No. 19-3, Ex. F at 45-57), gives rise to an inference that Tepatitlan feared what the bill would show (presumably a pay-per-view purchase of a license to view the fight at a private home).

Tepatitlan responds by pointing to the notarized letter from the restaurant patron and the near-identical affidavits noted above. Tepatitlan argues that these give rise to a genuine factual dispute material to determining whether the restaurant showed the fight. The court agrees with J&J that these affidavits and letter do not give rise to a factual dispute. The notarized letter does not state that the patron was at Tepatitlan on the night of the fight. Instead, it says only that the patron had not seen pay-per-view programming on his regular visits to the restaurant. Because the patron does not say that he was present on the night of the fight, the letter does not create a genuine factual dispute as to what happened the night the fight was broadcast. The affidavits are similarly insufficient. All thirteen recite a substantially identical statement: "I, <name> never seen pay-per-view fight at Taqueria Tepatitlan located at 10337 East Freeway Houston, Texas 77029 any day and on date question September 15, 2012 between Julio Cesar Chavez vs. Sergio Martinez." The affidavits do not indicate who the affiants are or state that they were present at the restaurant on the night at issue. (Indeed, they do not even indicate that the affiants had ever been to the restaurant.) They do not give rise to a genuine factual dispute material to deciding whether the restaurant showed

the fight.

The court's own examination of the summary judgment record demonstrates that J&J has not satisfied its summary-judgment burden.[2] Tepatitlan attached its interrogatory responses to its own motion for summary judgment, (Docket Entry No. 18-4), and its response to J&J's motion, (Docket Entry No. 20-3). The responses are verified and based on Efren Gonzalez's personal knowledge. (Docket Entry No. 18-4 at 8). They are competent summary judgment evidence. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). In the interrogatory responses, Tepatitlan repeatedly denies, under oath and based on Gonzalez's personal knowledge, that it showed the fight. (Docket Entry No. 18-4 at 4 ("No one ordered the event nor showed it at the establishment. . . . We did not receive the Event at the Establishment in any manner. . . . [T]he event was not ordered, received, or transmitted at the establishment."); *id.* at 7 ("The event was not show at the establishment in any way.")).

This verified interrogatory response is competent summary judgment evidence that creates a genuine factual dispute material to whether Tepatitlan showed the fight at all. J&J is correct that Tepatitlan's failure to produce its September DirecTV bill is relevant, but it does not negate as a matter of law the inference that Tepatitlan did not show the specific fight at issue. Tepatitlan's response pleading attaches an affidavit in which Gonzalez states that he did not have a copy of the bill, executed a release entitling J&J to access his satellite bills, and made good-faith but unsuccessful efforts to get and produce the bill. (Docket Entry No. 20-4). At a minimum, there is a credibility issue that cannot be resolved at the summary judgment stage. Tepatitlan's response,

---

[2] The court is not required to, but is permitted to, examine materials in the summary-judgment record that the parties do not cite. Fed. R. Civ. P. 56(c)(3).

including Gonzalez's statement, makes the cases that J&J cites distinguishable. In those cases, courts drew negative inferences at summary judgment based on a party's failure to produce certain documents.

There is a genuine factual dispute material to deciding whether Tepatitlan showed the fight, precluding a grant of J&J's motion for summary judgment.

**IV.     Conclusion**

The cross-motions for summary judgment, (Docket Entries Nos. 18 and 19) are denied. The parties are to appear on Friday, October 28, 2016, as scheduled, for the final pretrial conference and docket call.

SIGNED on October 21, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge